UNITED STATES DISTRICT COURT DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH D'AGOSTIN | ) | |
| *Plaintiff* | ) | NO. 3:20-cv-01657-KAD |
| | ) | |
| v. | ) | |
| | ) | |
| FITNESS INTERNATIONAL, LLC. | ) | |
| D/B/A/ LA FITNESS | ) | |
| *Defendant* | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO ORDER

The Defendant, Fitness International, LLC, d/b/a LA Fitness ("Fitness International"), hereby respectfully objects under Federal Rule of Civil Procedure 72(a) and Local Rule for Magistrate Judges 72.2(a) to the Order granting, in part, and denying, in part, the Motion to Quash Plaintiff's Notice of Deposition of Corporate Designee filed by Fitness International. Doc. 31; *D'Agostin v. Fitness Int'l*, 2021 U.S. Dist. Lexis 51001, *6 (Mar. 18, 2021) (Merriam, J.) ("Order").

This is a case where the plaintiff alleges a simple slip and fall in an area where there were no accidents during the prior three years, despite hundreds of club members walking over this area on a daily basis. The Order, compelling the defendant to investigate over 100 different facilities in different states with different floors, ages, layouts, laws and environments, contravenes the principles of both proportionality and fairness, ***especially in light of the fact that the subject floor in the Norwalk health club had no ongoing problems with accidents.***[1]

---

[1] *See e.g.* Doc. 32 at 14. The defendant further proffers that it was advised by health authorities in Connecticut to remove mats from the shower and locker room areas due to health concerns such as mould and bacteria prior to this accident. *See* Affidavit of Jon Leary, attached hereto as Exhibit A. Thus, the plaintiff's dive into similar accidents in other jurisdictions with different environmental factors involves expensive and time-consuming futility, unrestrained by the actual legal circumstances of what was going on in Connecticut.

**ORAL ARGUMENT REQUESTED**      1

In addition, the Order erroneously expanded the scope of the discovery sought by the plaintiff from similar accidents occurring in the locker room/shower area as initially set forth in Plaintiff's Notice of Deposition, (where the plaintiff allegedly slipped and fell) to accidents on any tile floor throughout Fitness International's facilities. Finally, the Order misconstrued the authority concerning the discoverability and proportionality of similar accidents upon which it relied in reaching its holding. Accordingly, the Order should be reversed under Rule 72(a).

## BACKGROUND

The Plaintiff's Complaint, initially filed in Connecticut Superior Court at the Judicial District of Fairfield/Norwalk on August 21, 2020, alleges that he slipped and fell on a wet tile floor in the men's locker room at an L.A. Fitness club location at 761 Main Street, Norwalk, Connecticut, on or about November 3, 2018. Doc. 1-1. ¶ 3. On January 15, 2021, after Fitness International removed, Plaintiff served a revised deposition notice of Fitness International's corporate designee under Federal Rule of Procedure 30(b)(6), seeking testimony and the production of documents on 49 different subjects. Doc. 17-1. Fitness International moved for a protective order.

After hearing from counsel, the Court concluded that as currently drafted, plaintiff's 30(b)(6) Notice is overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information from all of defendant's nationwide fitness clubs. Nevertheless, the Court also concluded that plaintiff is entitled to information from a reasonable subset of defendant's fitness clubs to determine whether there are any comparator cases. Based on this conclusion, the Court ordered counsel to meet and confer in an attempt to agree on narrowed deposition topics and document requests.

2

On March 15, 2021, the parties informed the Court by email "that they were unable to reach an agreement concerning the scope of the 30(b)(6) deposition topics and documents to be produced by the deponent." Doc. 31, App. A. Rather, the parties set forth the following competing proposals:

> The Plaintiff would agree to limit his requests to CT, NY, NJ and PA. All requests would be limited to accidents "involving falls on water or substances on tile floors" for 5 years leading up to the date of accident. This would involve approximately 102 clubs out of the approximately 750 clubs. The plaintiff's theory is that tiled areas that are exposed to water (i.e. showers, pools, saunas) should be tiled with skid resistant tile and/or appropriate matting.
>
> The Defendant, Fitness International, proposed to limit the scope of the 30(b)(6) deposition topics and documents to be produced by the deponent, as an initial matter, by limiting the inquiry to three years of slips and-falls in the shower areas at LA Fitness facilities in the State of Connecticut constructed within three years of the Norwalk facility.

*D'Agostin, supra* at *5-7. The Court, *Merriam, J.* approved and so-ordered the plaintiff's proposed limitation. *Id.* at *7.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 72(a) provides:

> Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

F.R.C.P. 72(a); *see also* D. Conn. L. Civ. R. Mag. 72.2(a).

3

# ARGUMENT

I. **Given Evidence Of Physical And Legal Dissimilarities In Clubs Outside Of Connecticut, The Order's Expensive And Time-Consuming Discovery Directive Is Not Proportional To The Needs Of The Case.**

It is not proportional to require Fitness International to investigate five years of incidents in over 102 health clubs when 1) there are physical and legal dissimilarities in clubs outside of the Connecticut market and 2) the costs of such an endeavor are overwhelming. Such an order is not proportional to the needs of this simple slip and fall case, especially given the absence of a problem on the floor on which the plaintiff claims he fell.

A. **Club floors have physical dissimilarities.**

Unlike a product liability case, there is no cookie cutter for the installation of floors in 102 facilities. The ages of the floors are different. Depending on club volume, the wear and tear on floors are different. The floors were installed by different independent contractors. The ages of the floors are different. The materials and method of construction can also be different. See. Robert Wilson Affidavit, attached hereto as Exhibit B, ¶¶ 2-5; *see also* Doc. 17-8. In addition, each facility may have unique physical characteristics relating to how a floor may be affected by the land it sits on. Further, the use of HVAC systems to reduce moisture in shower areas can, of course, vary among all facilities depending on different units, different ages and effectiveness. All of these factors means that comparing a Fitness International shower floor in Philadelphia shares little in common with a shower floor in Norwalk, Connecticut. While these factors were highlighted by the Court at the hearing, *see* Doc. 32 at 15, 18, they are not mentioned or considered in the Order.

4

### B. Clubs have legal dissimilarities outside of the Connecticut market.

The Order's directive creates time consuming rabbit holes and perhaps hundreds of mini-trials in jurisdictions that have different health concerns, different standards of care, and different regulations that may affect what steps health clubs may reasonably take that have no bearing on the actual circumstances in the Connecticut market.  For example, under New York law,  one of the states embraced by the Order, "[t]he presence of water alone is insufficient to establish a dangerous condition." *See Noboa-Jaquez v. Town Sports Intl., LLC*, 2015 NY Slip Op 32556 (Sup. Ct., N.Y. Cty. Apr. 4, 2015) (Masley, J.) (directed verdict against plaintiff alleging fall on wet locker room tiles and failure to place matting), *citing Nespoli v Equinox Holiday Inc.*, 2012 NY Slip Op 32420U (Sup. Ct., N.Y. Cty. 2012) (summary judgment against plaintiff alleging fall on wet tiles in sink area of gym because wet floor is incidental to use of locker room and not a dangerous condition or defect); *Dove v Manhattan Plaza Health Club*, 113 AD 3d 455 (1st Dept.), *appeal denied*, 24 N.Y.3d 901 (2014) (water "necessarily incidental" to the use of the pool).

Thus, the exact definition of a hazard offered by plaintiff in the present case–a wet floor near the showers–would not constitute a defect in the state of New York. This fact begs the question of how examining tile floors in New York where the law does not recognize a "defect" can be compared with tile floors in Connecticut.[2] If plaintiff is correct in his assertion that Connecticut imposes a duty of care in regards to floors that are wet but incidental to use (a

---

[2] The defendant is not taking the position that the "necessarily incidental" argument does not apply to Connecticut law. However, plaintiff's position assumes it does not and thus how legal duty is defined differently in other jurisdictions demonstrates that comparisons of "defects" in different states can be misleading.

5

position the defendant disputes),  an examination of New York tile floors near showers and pools involves a different standard of care.

Moreover, Connecticut public health authorities advised Fitness International to remove mats from the Connecticut market due to concerns of bacteria and mold. See Exhibit A, ¶¶ 2-5. The very purpose of plaintiff's investigation into other facilities outside of the Connecticut market is to demonstrate why Fitness International should have had mats at the accident location. The plaintiff notes:

> This case is about the defendant's failure to provide protective mats in the area of the locker room, when they had knowledge of many other similar accidents. This evidence is highly relevant and thus an essential need in this case. This evidence would not only show that the practice of allowing locker rooms to not have mats is dangerous, but it is also relevant to show the defendant had notice of this dangerous practice, but continued to not take reasonable steps in managing the locker rooms with non-skid matting.

Doc. 23 at 2-3.  As the defendant could not install mats at the accident location, the search for data outside of Connecticut to demonstrate why Fitness International should have installed them is meaningless and disproportionate to the needs of the case.

    **C. Given Physical And Legal Dissimilarities In Jurisdictions Outside Of The Connecticut Market, The Court Should Limit The Search To The 9 Other Fitness International Clubs In Connecticut, Or Alternatively, The 25 Fitness International Clubs Closest To Norwalk, Connecticut In Distance.**

In its underlying motion, Fitness International provided evidence by affidavit as to the costs of searching for information requested by plaintiff.  Depending on how many incidents were discovered, the costs of such an investigation could be greater than $100,000 under the Order's allowance of a search of 102 clubs. See Exhibit B; Doc. 17-8.  When this Court

considers the physical and legal dissimilarities referenced above and the non-existence of an ongoing slipping hazard on the subject floor, the Order is disproportionate to the needs of the case.

A search limited to the 10 clubs in the Connecticut market represents a sufficient data point to discover whether or not there is an ongoing known hazard on the locker room/shower tile floors.  For example, if a review of records from the time Dri-Dek matting was removed in 2015 to the time of the accident revealed hundreds of slip and fall accidents in the subject area, then plaintiff has developed information that he can use to argue knowledge of a hazard. Likewise, if a review of records from the time Dri-Dek was removed in the 2015 time period to the time of the accident revealed few or no similar accidents, then it would seem that the Connecticut market evidence sufficiently demonstrates there was not a problem with the subject floors. Such a search would provide discovery relevant to the plaintiff's claims and would be proportional to the needs of this simple slip and fall case. *See* F.R.C.P. 26(b)(1).

To the extent that the Court wished for more than a sample size of ten facilities, Fitness International suggests that no more than 25 facilities closest to Norwalk, Connecticut be used for the search.  Of course, this search would push beyond the boundaries of Connecticut into other jurisdictions, which would be subject to the problems discussed above. However, the overall cost of the search would be more manageable and less burdensome.

**II. The Order construed applicable authority concerning discoverability and proportionality of similar accidents contrary to law.**

Further, in its proportionality finding that "the plaintiff's proposal is reasonable in temporal scope and is narrowed in such a way as to encompass other accidents with circumstances "similar enough" to the present case," the Court relied expressly on the authorities

7

of *Cohalan v. Genie Indus., Inc.,* 276 F.R.D. 161, 166 (S.D.N.Y. 2011) (Francis, J.) and *Stagl v. Delta Airlines, Inc.,* 52 F.3d 463, 474 (2d Circ. 1995). However, neither case is apposite here.

*Cohalan, supra* is one of a line of products liability cases in our Circuit where plaintiffs sought discovery of prior accidents involving the product that allegedly injured them. Products liability–in contradistinction to premises liability matters like the instant slip and fall case–intrinsically lends itself to discovery of prior accidents, because of the high degree of similarity between accidents. Specifically, each accident often involves the same product, the same alleged defect, and the same alleged manner of failure and injury. Accordingly, the principles set forth *Cohalan* has been applied repeatedly in support of discovery of prior accidents in products liability cases, but not in premises liability cases. *See e.g. Lutes, supra* at *19 (jet ski) ; *Oleg Cassini, Inc. v. Electrolux Home Prods.*, 2013 U.S. Dist. LEXIS 17460, at *8-9 (S.D.N.Y. Feb. 7, 2013) (Francis, J.) (dryer); *Laudero v. Otis Elevator Co.*, 2011 U.S. Dist. LEXIS 74920, at *5-6 (W.D.N.Y. July 12, 2011) (McCarthy, J.) (elevator). Indeed, even in these product liability matters, the Court limited the discovery of similar accidents to those involving the same or similar model of product, and the same mode of failure. *See Cohalan, supra* at *167; *Lutes, supra* at *19; *Oleg Cassini, supra* at *9; *Otis, supra* at *6. These cases are instructive insofar as they demonstrate the application of the discoverability of similar accidents in the products liability context; they are not apposite where, as here, the discovery is directed at 102 clubs "constructed at different times, with different construction plans and materials," *see* Exhibit B at 2, in different states, with different environmental climates and regulatory requirements. *See also* Doc. 17-8 at 2.

The Court itself adverted to this point when it proposed the age of construction or date of opening of the facilities as a proportional limitation designed to capture relevant similar accidents. The Court, *Merriam,* J., opined:

> And so my thoughts are possible limitations are regional limitations, the year the club was built … The year the club opened maybe might be a reasonable alternative way of searching.
>
> …
>
> [T]he logical way to do this, one is, as I say, the opening date of the facility. That might be an interesting one, because it would suggest that if this facility was opened in 2005, that facilities opened between 2000 and 2010 are most likely maybe to have similar designs. I don't know. So that would be another way other than, you know, other than regional.

Doc. 32 at 15, 18. However, the Court's Order did not incorporate this proportional limitation. *See D'Agostin, supra.*

*Stagl, supra* was a premises liability matter, but its ultimate disposition belies the Court's application thereof in its Order. On appeal of summary judgment, Eleanor Stagl successfully argued that the District Court improperly denied her request for discovery of similar accidents at Delta baggage carousels. *Stagl, supra* at 466. The Second Circuit Court of Appeals held, "Evidence of such incidents would unquestionably be relevant, if not central, to Mrs. Stagl's case, and we hold that the district court's refusal to compel Delta's compliance with her request constituted an abuse of discretion." *Stagl v. Delta Airlines*, 52 F.3d 463, 474 (2d Cir. 1995). On remand, however, the Court held, "the scope of discovery regarding previous carousel-related accidents is **limited to those accidents that have occurred at or near defendant's baggage carousels at LaGuardia** and the plaintiff is prohibited from inquiring into and deft. need not provide information regarding carousel-related accidents that have occurred at any airport other

9

than at LaGuardia." *Stagl v. Delta Airlines,* No. 1:93-cv-02544-ERK, Doc. 36 (June 28, 1995) (Bartels, J.). The discovery as to prior similar accidents was permitted–**but only as to the subject location**, not to locations nationwide.

The plaintiff then renewed her request to Magistrate A.S. Chrein, who held that the Defendant was to produce "all claims occurring within 5 years at any baggage carousel in the U.S. or provide an affidavit explaining the unavailability of this information." *See id.,* Doc. 50. Upon objection by the defendant under Federal Rule of Civil Procedure 72(a), Judge Edward Korman subsequently reversed that order. *See id.,* Doc. 55. Ultimately, the plaintiff was not able to discover any similar accidents. *See Stagl v. Delta Air Lines*, 117 F.3d 76, 80 (2d Cir. 1997). *Stagl* therefore stands for the proposition that similar accidents may be discoverable–but **not** for the proposition that similar accidents are broadly discoverable throughout a defendants' operations in a premises liability matter.

Indeed, in finding that "plaintiff's proposal is both proportional to the needs of the case, and not unduly burdensome," and accepting plaintiff's argument that "the costs to defendant of obtaining the information is outweighed by the potential benefit of the information," *D'Agostin, supra* at *4-5, the Court similarly relied on authority that makes clear the Rule 30(b)(6) deposition sought by the plaintiff here is not proportional to the needs of the case. *See D'Agostin, supra* at *4, *quoting Bigsby v. Barclays Capital Real Estate, Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (Aaron, J.) ("[t]he deposition topics must be relevant to any party's claim or defense[,] ... should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with reasonable particularity").

*Bigsby*–in which testimony as to accounting codes not specifically at issue in that case was denied as disproportional to the needs of the case–in turn quoted *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 133373, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (Failla, J.) for the proposition that the Court recited in the Order here. In *Blackrock, supra,* the Court found that the benefits of the requested discovery were outweighed by the burden, expense, and because it would "cost hundreds of thousands, if not millions, of dollars, will require months to conduct, and will likely result in challenges to the admissibility of the evidence." *Blackrock*, *supra* at *145. Here, the record reflects that the deposition Ordered by the Court could cost up to $ 117,000, *see* Doc. 17-8 at 3, over 50 % of the plaintiff's total cost of medical treatment, *see* Doc. 23 at 4. Discovery of similar accidents at 102 facilities will also likely result in challenges to the admissibility of evidence. *Cohalan, supra* at 166 ("evidence of similar accidents is admissible only if those accidents are shown to be "substantially similar"). Further, the Court made no finding and articulated no reason why Fitness International's proposed limitation as to facilities in Connecticut constructed at approximately the same time as the facility at issue would not afford the plaintiff an opportunity to conduct proportional discovery as to constructive notice. *See* Doc. 31*,* App. A. Finally, while the Court here concluded that the discovery sought is relevant as to proving notice, see *D'Agostin, supra* at *4, the requested discovery is relevant only to **constructive** notice–the plaintiff can still establish his claim by showing actual notice.

Because the Order misconstrued the authority upon which it relied, and that authority does not support the discovery of similar accidents as to 102 facilities in this slip and fall case, it should be reversed.

**III. The Order erroneously expanded the scope of the original deposition notice.**

Finally, after briefing and argument by the parties addressed the appropriate number of facilities in which the plaintiff could discover similar accidents on "locker room floors," the Court instead ordered the plaintiff's inquiry **expanded** to similar accidents "on water or substances on tile floors" throughout the facilities in question. Specifically, the plaintiff's deposition notice sought testimony by a corporate designee and the production of documents on "locker room floors," Doc. 17-1, ¶ 23, and "slip and fall incidents in the locker rooms." Doc. 17-1, ¶¶ 24, 25, 26, 27, 28. After directed by the Court to "meet and confer in an attempt to agree on narrowed deposition topics and document requests," *D'Agostin, supra* at *6, the plaintiff instead proposed to expand the scope of discovery. While his proposal did reduce the requests from all 730 nationwide facilities to the 102 facilities spanning the Jersey Shore to Buffalo, at the same time it **expanded** the scope of the inquiries from "slip and fall incidents in the locker rooms"–defined by plaintiff as the location of the incident[3]–to "accidents involving falls on water or substances on tile floors." *Id*. This proposal would expand the inquiry from the locker room– where the plaintiff allegedly fell–to any area with a tile floor throughout the 102 facilities, including the entryways, lobbies, stairwells, pools, and spas.

The Court, in approving the plaintiff's proposal, directed the plaintiff to serve a revised deposition notice consistent with its Order. *Id.* The plaintiff served a revised deposition notice the

---

[3]  The term "incident" means the event of November 3, 2018, when the Plaintiff was lawfully on the premises located at 761 Main Street, Norwalk, Connecticut owned, controlled, possessed, managed and/or maintained by the Defendant, Fitness International, LLC, d/b/a L.A. Fitness. The Plaintiff, Joseph D'Agostin, was in the men's locker room when he was caused to fall by the dangerous and defective condition therein existing, a wet tile floor, and suffered serious injuries, losses, and damages.

Doc. 17-1 at 3.

following day. *See* Revised Notice, attached hereto as Exhibit C. The revised notice sought testimony by a corporate designee and the production of documents on the proposed **expansion**: on "incidents involving water or substances on tile floors," Exhibit C, ¶ 23, and "slip and fall incidents involving water or substances on tile floors," Exhibit C, ¶¶ 24, 25, 26, 27, 28. It is apparent from a comparison of the notice of deposition issued prior to the Court's Order, Doc. 17-1, with the notice issued after the Court's Order, Exhibit C, that the plaintiff took the Order as an invitation to further broaden the scope of his inquiry.

The Court approved and so ordered the plaintiff's proposal, despite the material expansion of the areas of inquiry from those originally sought and argued, without hearing further argument. Had the plaintiff initially sought discovery as to all falls on tile floors previously, Fitness International would have adduced evidence establishing the environmental and contextual differences between the tile in the pool, the tile on the stairs, and the tile in the locker room.

***Indeed, the plaintiff's approved and so-Ordered proposal further removed his inquiries from the applicable standard governing discovery of similar incidents–those "involving similar circumstances, or alleged defects similar to those at issue in this action."*** *McAnneny v. Smith & Nephew, Inc.*, 2018 U.S. Dist. LEXIS 47927, at *9 (D. Conn. Mar. 19, 2018) (Merriam, J.) (denying motion to compel where interrogatory as to similar accidents not limited to defects "similar to that alleged in this case"). Falls on a tiled stairwell "involving water or substances" at an LA Fitness in Pittsburgh do not involve the similar circumstances that are required for discovery under Federal Rule of Procedure 26(b)(1). See *id*. at *16, citing *Lutes v. Kawasaki Motors Corp.*, 2014 U.S. Dist. LEXIS 173202 at *7 (D. Conn. Dec. 16, 2014) (Fitzsimmons, J.)

(denying motion to compel where interrogatory as to similar accidents not limited to defect "which is the focal point of this litigation"); *Butkowski v. Gen. Motors Corp.*, 497 F.2d 1158, 1159 (2d Cir. 1974) (affirming denial of discovery motion where "discovery sought concerned an entirely different defect from the one that plaintiff claimed caused the accident."). Accordingly, the Order should be reversed.

## CONCLUSION

Once central purpose of the proportionality requirement set forth in Federal Rule of Civil Procedure 26(b) is to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Advisory Committee Note to 2015 Amendment. Fitness International has proposed a proportional limitation on the plaintiff's requested discovery, one that would permit the plaintiff to discover similar accidents in similar facilities throughout the State of Connecticut, approximately 10 facilities.[4] The plaintiff's proposal and the Court's Order not only expanded the original scope of discovery sought, but, if applied in other cases, would routinely implicate expansive discovery in simple premises liability matters and slip and fall cases like the one at bar, regardless of the configuration of the premises where the incident occurred or the circumstances under which the particular fall occurred. This is clearly erroneous and contrary to law. Accordingly, the Court's Order should be reversed, and Fitness International's proposed limitation adopted and ordered.

---

[4] *See D'Agostin, supra* at \*7.

Respectfully submitted,

Defendant,
FITNESS INTERNATIONAL, LLC, D/B/A
LA FITNESS
By its attorneys,

_/s/ Ben Levites_____
Kevin J. O'Leary, ct30271
Benjamin H. Levites, ct30481
Coughlin Betke LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050
koleary@coughlinbetke.com
blevites@coughlinbetke.com

## CERTIFICATION

    This is to certify that a copy of the foregoing was filed electronically on April 1, 2021. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_/s/ Ben Levites_____
Benjamin H. Levites